UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | No. 15 CR 315 |
| v. ) | |
| ) | Judge Thomas M. Durkin |
| JOHN DENNIS HASTERT ) | |

**DEFENDANT JOHN DENNIS HASTERT'S SENTENCING MEMORANDUM**

Defendant John Dennis Hastert, by and through his counsel, respectfully submits this Sentencing Memorandum for the Court's consideration in connection with Mr. Hastert's sentencing.

By any measure, appearing before this Court to receive its sentence will be the most difficult day in Mr. Hastert's life. Mr. Hastert's fall from grace has been swift and devastating. Neither we as his lawyers, nor Mr. Hastert, have the present insight to understand and reconcile the unfortunate and harmful incidents he caused decades ago with the enduring achievements, leadership, and generosity that earned him extraordinary affection and respect throughout this country during his many years of public service. What we do know is that he will stand before the Court having deteriorated both physically and emotionally, undoubtedly in part due to public shaming and humiliation of an unprecedented degree. Despite his mistakes in judgment and his transgressions, for which he is profoundly sorry, we implore this Court, in imposing sentence, to consider the entirety of Mr. Hastert's life (including the fact that he reshaped his life many years ago), the mitigating circumstances that surround the offense to which he pled guilty, and his deteriorated condition.

I.   **Mr. Hastert's Remorse**

First and foremost, Mr. Hastert is deeply sorry and apologizes for his misconduct that occurred decades ago and the resulting harm he caused to others. He regrets that he resorted to structuring the withdrawal of his money from banks in an effort to prevent the disclosure of that misconduct. Mr. Hastert also apologizes to his family, friends, former constituents, and all others affected by his misconduct. Although the past year has been the most difficult of Mr. Hastert's seventy-four years, he is prepared to accept responsibility for his conduct and to receive this Court's sentence.

II.   **Personal Characteristics**

As Mr. Hastert's counsel, we have had an opportunity to get to know him and also to hear from those who know him best. Throughout this process we have noted a recurrent theme, which is that Mr. Hastert has enriched the lives of so many over his lifetime, including his family, his employees, his students, his mentees, his constituents, and others who he has met along the way. As the Court has learned from reviewing letters written on Mr. Hastert's behalf, many have emphasized Mr. Hastert's spirit of encouragement, listening skills, ability to bring diverse sides together in pursuit of the public good, and belief in the importance of respect. Despite crushing demands, Mr. Hastert took the time to develop relationships with his staff and mentees, encourage them, and create opportunities for them.

Mr. Hastert's life has been guided by his commitment to service. Mr. Hastert became a teacher and coach to make a difference in the lives of young people, just as his teachers and coaches had made an enormous difference in his life. Later in life he devoted his energy to government service, where he continued to help others on a larger stage. He worked long hours, committed to the belief that he could always give more to the people he served. After his retirement, Mr. Hastert focused his efforts on creating a center at his alma matter, Wheaton

College, to educate future generations of leaders on the intersection of economics, government, and public policy. These endeavors were driven by Mr. Hastert's desire to encourage others to consider a career in public service and to best equip them with the skills to succeed.

On the day of his indictment, Mr. Hastert voluntarily resigned from multiple committees and institutions in order to shield those entities from the stigma that he knew would soon attach to his name. Mr. Hastert asked to have his name removed from what was then known as the J. Dennis Hastert Center for Economics, Government, and Public Policy—the center he had helped to create and build—because he believed that his indictment would serve as a black cloud and he wanted to minimize the repercussions felt by the school and its students.

Although Mr. Hastert dedicated himself to public service, he has always viewed his family as his top priority and most important blessing. Mr. Hastert and his wife have been married for forty-three years. They have two sons, two daughters-in-law, and four grandchildren, who are all very close. Even during the busiest times of his career, Mr. Hastert was committed to spending as much time as possible with his family. While serving at the state level, Mr. Hastert stayed in Springfield during the week (while the House was in session) and returned home to his family in Yorkville on the weekends. Mr. Hastert made a similar journey while serving in Congress, often flying home from Washington to Yorkville on Thursday evening so he could spend the weekend with his family. Mr. Hastert made an effort to be at his sons' events—he rarely missed a little league game or high school football game during his time in politics, and was never too busy to take his children on college visits or to take them fishing, rain or shine. Mr. Hastert is humbled and extremely grateful to his family for their continued support in spite of his misconduct and the attention that it has garnered. He draws great strength from their love and support.

Mr. Hastert is also strengthened by his faith, on which he has relied to get him through the past year. As a teenager, one of his most meaningful memories was finding religion. He also attributes his faith as having taught him the importance of duty and responsibility. Amidst his present circumstances, Mr. Hastert takes a great deal of comfort in the kindness of others who say they are praying for him.

As Mr. Hastert's counsel, we, like Mr. Hastert, fully understand the gravity of his misconduct. However, we submit to the Court that Mr. Hastert is more than his past mistakes and respectfully request that, when determining an appropriate sentence, the Court consider the lives Mr. Hastert has impacted for the better, the contributions he has made, and his many good traits.

### III.  Impact of Mr. Hastert's Conduct on Himself and His Family

In the months between the indictment and his entry of a plea of guilty, Mr. Hastert was in a state of despair caused by extreme isolation and the withdrawal of support from many friends and former colleagues. Since the entry of his guilty plea and his subsequent hospitalization, Mr. Hastert continues to be consumed by feelings of regret. He is overwhelmed by the guilt he feels for his actions, for the harm he caused by his misconduct, and for disappointing those who have supported him for so long.

Since his indictment, Mr. Hastert's work and his reputation have become forever tainted. Mr. Hastert has been stung by the public repudiations of him that followed his indictment, including the removal of his portrait from the United States Capitol, the removal of his name from the public landmarks for which he passionately fought, and the characterization of his legacy as a "black eye" on his county. Many of Mr. Hastert's friends and colleagues have cut off contact with him due to the public allegations, which Mr. Hastert understands, but the loss of their friendship nonetheless is additional cause for his despair. Mr. Hastert knows that the days

of him being welcomed in the small towns he served all of his life are gone forever. He knows that, for the rest of his life, wherever he goes, the public warmth and affection that he previously received will be replaced by hostility and isolation. Mr. Hastert recognizes that this change is due to his own conduct and is not in any way the fault of others, who rightly disapprove, but it is nonetheless painful for him.

Mr. Hastert is tormented by the thought that this disgrace will follow his family members who are guilty of nothing more than sharing his last name. Mr. Hastert is distraught that his beloved family members may, for the rest of their lives, face derision and questions about misconduct that is Mr. Hastert's responsibility alone. He remains particularly concerned about his wife. She is a private person and, for her, the media scrutiny has imposed a heavy burden. After the indictment, the media's pursuit of both Mr. Hastert and his wife took a serious toll. Reporters flooded their driveway, overflowed on the road outside their house, and camped on their lawn. One photographer navigated the forest preserve adjacent to their backyard to take photos of Mr. Hastert's family through their home windows. Helicopters circled their house from above, and reporters even followed them to Wisconsin as the Hasterts searched for privacy in the days following the indictment.

Mr. Hastert recognizes that his misconduct is the cause of this public disapproval and close scrutiny, and does not seek to shift responsibility. But as his counsel, we respectfully request that the Court consider the humiliation and isolation that Mr. Hastert and his family have already suffered when determining his sentence.

### IV.     Current Medical Condition

While Mr. Hastert has suffered from Type 2 diabetes since 1988, he did not show signs of significant illness, with regard to the diabetes or otherwise, in the weeks leading up to his guilty plea. Shortly after pleading guilty on October 28, 2015, however, his health declined

5

dramatically. As he awaited treatment for a foot ulceration caused by diabetes, Mr. Hastert fell ill and experienced recurrent fevers. On November 3, the day before his planned surgery, Mr. Hastert collapsed at his home and could not stand up. His internist happened to call a few minutes after the fall to inform Mr. Hastert that his lab results indicated the existence of a significant infection. Upon learning of the fall, the internist instructed that Mr. Hastert be taken to the emergency room immediately.

At the hospital, Mr. Hastert was weak, had difficulty moving his legs, and showed significant signs of infection. Mr. Hastert's internist later reported that Mr. Hastert suffered from a severe form of sepsis, a rare blood stream infection affecting approximately four in 100,000 per year. According to the internist, Mr. Hastert nearly died during his first week in the hospital.

While in the hospital, Mr. Hastert also suffered from a small stroke and was further evaluated for spinal abscess/discitis. He was thereafter transferred to another hospital, where he was put under the care of a neurosurgeon and an infectious disease specialist and was treated for a spinal infection (which required spinal surgery), the stroke, and sepsis. Mr. Hastert's mobility was significantly compromised from the stroke and spinal discitis. He underwent two neurosurgical procedures to restore function to his lower extremities.

Mr. Hastert remained hospitalized for treatment and rehabilitation for over two months, from November 3, 2015, through January 15, 2016. At the time of discharge, his physician reported that Mr. Hastert needed at-home nursing (including for administration of intravenous antibiotics) as well as at-home physical and occupational therapy for several weeks. He also continued to need close follow-up with several physicians, including an infectious disease specialist, a neurosurgeon, a urologist, his primary care physician, and a physical rehabilitation

specialist. Upon discharge, Mr. Hastert needed assistance to perform all of the major activities of daily living except for feeding himself.

Mr. Hastert continues to need assistance with all major activities of daily living except for feeding himself—he needs assistance getting out of bed, toileting, bathing, and dressing himself. He has spent his days receiving at-home therapy and more recently started outpatient physical therapy to improve function in his lower extremities. Mr. Hastert remains limited to a wheelchair, though he can walk short distances with a walker and an assistant. His physician reports that Mr. Hastert needs a caregiver twenty-four hours each day to meet his basic needs. Mr. Hastert relies on the constant care of his wife, family, and friends to help him perform these tasks. Without this assistance, he would need to be in a nursing home.

Mr. Hastert also continues to receive treatment for a variety of other complications, including spinal stenosis-related lumbar back pain, an enlarged prostate, diabetes, hypertension, high cholesterol, insomnia, and sleep apnea. Moreover, while the infection has cleared, Mr. Hastert's physician reports that recurrence of a deep-seated infection in the lumbar disc remains a possibility. Because of this risk, Mr. Hastert requires close monitoring and ongoing follow-up with his infectious disease specialist every thirty to ninety days for the next year, and will need prompt access to the dedicated medical professionals who have provided treatment to date. Mr. Hastert's internist believes that his prospects for full recovery will not be known completely for some time.

## Conclusion

Mr. Hastert feels deep regret and remorse for his actions decades ago and is prepared to accept the consequences. He understands, accepts, and admits that he violated the law. As Mr. Hastert's counsel, we respectfully request that the Court in imposing a sentence consider the totality of the circumstances that surround this violation, his regret and acceptance of

7

responsibility, the cost that has already been exacted over the past year, as well as Mr. Hastert's fragile medical condition.

For all these reasons, the defense respectfully requests that the Court impose a sentence of probation.


Dated: April 6, 2016   Respectfully submitted,

*/s/ Thomas C. Green*


Thomas C. Green
SIDLEY AUSTIN LLP
1501 K Street N.W.
Washington, DC 20005
(t): 202-736-8000
(f): 202-736-8711

John N. Gallo
Geeta Malhotra
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, Illinois 60603
(t): (312) 853-7000
(f): (312) 853-7036

*Counsel for John Dennis Hastert*

## **CERTIFICATE OF SERVICE**

I, Geeta Malhotra, hereby certify that on April 6, 2016, I caused a copy of the foregoing to be electronically filed with the Clerk of the United States District Court for the Northern District of Illinois, using the CM/ECF system, which will send notification of such filing to all attorneys of record.

*/s/ Geeta Malhotra*